UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TRACY SIMPKINS, on behalf of himself and
all similarly situated employees,

    Plaintiffs,                         CASE NO.: 6:08-cv-00130-PCF-DAB

v.

PULTE HOME CORPORATION, a foreign
corporation,

    Defendant.
_____/

**DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER REQUIRING PLAINTIFF TO CEASE AND DESIST FROM DIRECT SOLICITATION OF PULTE EMPLOYEES, AND TO PRODUCE LIST OF EMPLOYEES CONTACTED, AND SUPPORTING MEMORANDUM OF LAW**

Defendant Pulte Home Corporation ("Pulte") respectfully moves this Court for an order: (1) instructing Plaintiff's counsel to cease and desist from directly soliciting and improperly and misleadingly communicating with present and former employees of Pulte entities in an attempt to have them join this case, in violation of the relevant ethical rules; and (2) requiring Plaintiff's counsel to produce the names and contact information of all such individuals contacted by Plaintiff's counsel,[1] including through its agents or employees, so that the Court can consider that information (along with the information set forth in this Motion) in determining appropriate remedies, including striking opt-ins, denying Plaintiff's Motion to Conditionally Certify Collection Action ("Motion to Certify") (D.E. 50), and providing any additional relief warranted by Plaintiff's counsel's direct and misleading solicitations.

---

[1] Specifically, Pulte only seeks the names and contact information of current and former employees of all Pulte entities within the three years preceding this lawsuit who had no prior relationship with Plaintiff's counsel, and who were contacted by them.

CASE NO. 6:08-CV-00130-PCF-DAB

## INTRODUCTION & SUMMARY OF FACTS

Plaintiff's counsel, in violation of the applicable ethical rules, have been directly and improperly soliciting former (and potentially current) Pulte employees by telephone. Plaintiff's telephone solicitations were brought to Pulte's attention by former employees who independently contacted Pulte to complain that they had received one or more telephone calls to their personal cellular and/or home telephone numbers from law firms that they did not know, and with whom they had no prior relationship, soliciting them to join this suit against Pulte.

Both of the complaining employees voluntarily provided sworn statements regarding their calls from Plaintiff's counsel. *See* Declaration of Joe Kandt ("Kandt Decl."), attached hereto as Tab A; David Leithead Declaration ("Leithead Decl."), attached hereto as Tab B. Joe Kandt, a former employee in Nevada, explained that he was called on his personal cellular and home phones by "Adriana" from the Shavitz Law Firm. Kandt Decl. at ¶¶ 3, 6. Prior to this call, Mr. Kandt had never heard of either Adriana or the Shavitz Law Firm. *Id.* Mr. Kandt testified that during the call:

> Adriana was trying to convince me to sign up for the lawsuit she said they were bringing against Pulte for people like me being required to work overtime and not be paid for it. I told her I was management but she kept on. She said her law firm is suing Pulte in Florida <u>for the practice of not paying overtime to exempt employees</u>.

*Id.* at ¶ 5 (emphasis added).

In addition to soliciting Mr. Kandt and providing misleading information about the claim in this lawsuit, Plaintiff's counsel (through Adriana) refused to tell Mr. Kandt how they obtained his name and personal contact information, despite his query. *Id.* at ¶ 4. Instead, after he pressed, the caller from The Shavitz Law Firm said she could not tell him and did not know, but that she might have obtained the information from a "friend of a friend of a friend" or another

former Pulte employee, indicating that she had been calling and soliciting countless other former and/or current Pulte employees. *Id.* As Plaintiff's counsel apparently requested of other solicitation targets, Adriana requested the names and personal numbers of other Pulte employees from Mr. Kandt. *Id.* at 5.

David Leithead, another former Pulte employee from Kansas City who ended his employment with Pulte on December 21, 2007, complained that he received a very similar, misleading telephone call in April soliciting him to join this lawsuit against Pulte. *See* Leithead Decl. ¶ 3. Again, the call came on his personal cellular phone, which he generally does not provide to others. *Id.* at ¶ 4. As with Mr. Kandt, Mr. Leithead had absolutely no relationship with the caller or the firm. *Id.* at ¶4. Mr. Leithead was told by the caller that that their firm "represented construction superintendents across the country, especially those who worked or used to work for Pulte." *Id.* at ¶ 3. Among other things, the caller said that they were representing these superintendents because "they were undercompensated for the hours that they worked by being improperly paid a salary." *Id.* Mr. Leithead informed the woman that he did "not want any part in this lawsuit, and [] ended the conversation." *Id.* Both Mr. Kandt and Mr. Leithead resented the intrusion into their privacy on their personal telephones. *Id.* at ¶ 5; Kandt Decl. ¶ 7.

Significantly, despite being a former superintendent of Pulte and never having been contacted about this suit by Pulte, Mr. Leithead, in his sworn declaration, stated:

> I believe that my former position as a superintendent with Pulte was 99% management. I managed the construction process, oversaw multiple subcontractors, mentored other Pulte employees, and kept my projects on track and under budget.
>
> When I was a Pulte superintendent, I rarely performed any manual work. The only type of "manual work" I can think of is maybe some minor clean up on the job site, and locking up the community on Fridays. I do not think I ever spent more than an hour a week,

> maximum, on these types of tasks. It was very minimal, and in my opinion, nothing that interfered with me being a manager. I never felt that manual work was one of my job duties.
>
> I have no interest in joining a lawsuit against Pulte for overtime compensation. I was a manager and I believe that I was properly compensated by salary.

*Id.* at ¶¶ 6-8. However, the caller did not request or even attempt to discover this type of critical factual information from either former Pulte employee.

In addition to the sworn statements submitted by Mr. Kandt and Mr. Leithead, other curious facts in this case that recently came to light indicate that there has been an ongoing, pervasive direct solicitation campaign by Plaintiff's counsel to round up as many opt-ins as possible, with no investigation into the propriety of the purported opt-ins' claims. Specifically, Plaintiff's counsel have submitted opt-ins who: (1) never held the position at issue; (2) have time-barred claims; and (3) made over $100,000 a year, even though Plaintiff's Motion to Certify excludes Superintendents who made more than $100,000 a year from the purported class definition.

Indeed, Plaintiff's counsel even had one opt-in former employee, Geoffrey Blomquist, sign a completely false declaration – identical to the other declarations submitted in support of Plaintiff's Motion to Certify – that states that he held **a job that he never held** and performed **duties that he never performed** at Pulte. Rather, Mr. Blomquist managed "Land Development" for Pulte, which is completely distinct and dissimilar from the Superintendent position that is described in his purported sworn declaration. *See* Motion to Certify at Comp. Ex. 3. Two days after Pulte asked to depose Mr. Blomquist as part of the limited discovery granted by the Court, and just several days after Mr. Blomquist signed the cookie-cutter and blatantly false declaration, Plaintiff's counsel wrote a curious email, stating:

> In an effort to coordinate Mr. Bloomquist for his requested deposition, we finally were able to track him down after 2 days of calls and messages. We learned that he has moved to Salt Lake City, Utah, as a result of the termination of his employment with Pulte and now lives there full time. Due to his current financial situation and personal obligations, he advised that he is not willing or able to participate in depositions or in this lawsuit at this time. Accordingly, and to be fair to your client, we will have no choice but to withdraw his consent . . .

Plaintiff's counsel then immediately withdrew his opt-in notice.

When confronted with these solicitations and misleading communications, Plaintiff's counsel admitted that their firms have people they train to make these calls, and that they have been making calls for this case, which they categorized as "work product" and "investigatory" – characterizations that are not supported by the facts or applicable law. Specifically, Plaintiff's counsel claimed that these phone calls were a necessary product of their continuing investigatory obligations under Fed. R. Civ. P. 11. Plaintiff's counsel refused to provide any further information.

Contrary to their assertion, Plaintiff's counsel's ongoing solicitation campaign is not "investigatory" at all, as revealed by Mr. Kandt's and Mr. Leithead's statements. Rather, they were aimed at misleading these employees -- who specialize in management in the building industry in which companies are suffering and jobs are scarce as a result – into believing they could part of this suit and recover monies for working over 40 hours a week, regardless of their actual job functions and whether they were properly classified as exempt under any of the five applicable white collar defenses in this case. Indeed, Plaintiff's counsel's communications with putative class members are likely as coercive and misleading as the solicitations reported by Mr. Kandt and Mr. Leithead.

And, when Pulte's counsel asked Plaintiff's counsel to cease their solicitation campaign and produce the list of Pulte's (or Pulte's related entities') current and former employees that

have been contacted in this way, Plaintiff's counsel refused. Instead, their proposed solution was to deal with any misleading communications and/or solicitations when they "got caught" – i.e., in response to specific complaints to Pulte by specific employees. Unfortunately, it is nearly impossible to spontaneously discover improper solicitations and misleading communications to former Pulte employees, because former employees rarely report this type of solicitation to join cases. Logically, this is particularly true when former employees are misled into believing that they have valid claims for overtime wages, even if they were properly classified as exempt.

In addition to better informing the Court regarding the improper conduct and appropriate relief, information on Plaintiff's direct solicitation campaign is directly relevant to the Court's determination on Plaintiff's Motion to Certify. First, if Plaintiff's counsel received other rejections and statements similar to those of Mr. Kandt, Mr. Leithead, and the declarants cited in Pulte's response to Plaintiff's Motion to Certify, who do not believe that they are similarly situated or aggrieved, and hence chose not to join this lawsuit, as is very likely, that fact is highly relevant to the "similarly situated" analysis. And second, information on the scope of Plaintiff's solicitation campaign is directly relevant to whether – together with the widespread radio and television advertisements –Plaintiff has provided more than enough notice to the putative class – particularly given the presumptive scope of the campaign that would result in complaints from two former employees from Nevada and Kansas City, and the fact that Plaintiff obtained few opt-ins, many of whom have no colorable claim.

Plaintiff's counsel's improper solicitations and failure to appropriately vet many of the opt-ins on which Plaintiff relies in his Motion to Certify (despite Plaintiff's counsel's Fed. R. Civ. P. 11 obligations), coupled with the serious and irreparable harm that would be caused by premature notice going out based upon the joinder of improper and/or misled opt-ins, warrants

the relief that Pulte requests in this Motion. In sum, Plaintiff's counsel have violated applicable professional rules of conduct and compromised the integrity of the administration of this putative FLSA collective action, which is specifically entrusted to the Court under 29 U.S.C. §216(b). In addition, the requested information is directly relevant to conditional certification. As a result, the Court should issue an order compelling Plaintiff's counsel to cease and desist from directly contacting current and former Pulte employees, to provide a list of names and contact information for employees contacted, and granting such further relief as the Court deems just and/or necessary.

## **MEMORANDUM OF LAW**

**I. PLAINTIFF'S COUNSEL'S DIRECT SOLICITATION CAMPAIGN USURPED THE COURT'S ROLE IN OVERSEEING THIS CASE**

Through their solicitation campaign, Plaintiffs' counsel have essentially removed this Court from the process mandated under § 216(b). This practice simply is not permitted. "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981); *see also Melendez Cintron v. Hershey Puerto Rico, Inc.*, 363 F. Supp. 2d 10, 15 (D.P.R. 2005) ("[d]espite the fact that the FLSA does create an opt-in mechanism, it is within the district courts' discretion to manage the joinder of parties and notice to parties.").

The Supreme Court has recognized that opportunities for abuse exist with unsupervised communications with potential class members. *Gulf Oil Co.*, 452 U.S. at 99-100 n.12. Such communications often threaten the fairness of the litigation process and the administration of justice if they are not properly managed by the courts. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997) (finding that pre-certification advertisements and mass

mailings of the plaintiffs' allegations nationwide would create a real possibility that the plaintiffs might use widespread publication of their claims, disguised as a class communication, to coerce defendants into settlement and surely could cause serious and irreparable harm to defendant's reputation and to its relationship with its employees.); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2nd Cir. 1980) ("Unapproved notice to class members which are factually or legally incomplete lack objectivity and neutrality . . . (and) will surely result in confusion and adversely affect the administration of justice."); *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.  The damages from misstatements could well be irreparable."). Such unsupervised communications are even more threatening when they are direct telephonic solicitations.  *See, e.g.,* Order, in *Vaughn et al. v. Oak Street Mortgage, LLC*, Case No. 5:05-cv-00311-WTH-GRJ (M.D. Fla. Aug. 3, 2005), attached at Tab C (finding in FLSA collective action that "unsolicited telephone calls to potential class members would be wholly improper and would violate rules of professional responsibility in most if not all states."). Thus, under *Gulf Oil*, the Court's powers include the authority to limit communications with potential class members to protect them from misleading conduct by counsel and undue influence.  *Id*.  Here, Plaintiffs' and their attorneys' conduct warrants such an order.

II. **PLAINTIFF'S COUNSEL'S DIRECT SOLICITATION CLEARLY VIOLATES THE RULES OF PROFESSIONAL CONDUCT.**

Shavitz Law Group and Morgan & Morgan are counsel of record for Plaintiff and are bound by the rules of this Court.  Their direct solicitation by telephone of former Pulte employees with whom they have no prior relationship, and their refusal to provide information regarding how they obtained personal telephone numbers and their names, violate The Florida

Rules of Professional Conduct as well as the rules of professional conduct in Nevada, where Mr. Kantz resides, and Kansas, where Mr. Leithead resides. *See* Fla. Bar Reg. R. 4-7.4; Nev. R. Prof. Conduct 7.3; Kan. R. Prof. Conduct 7.3. All three sets of rules expressly prohibit this type of direct solicitation of prospective clients, including through their agents or employees.[2]

Rule 4-7.4(a) of Florida's Rules of Professional Conduct expressly provides that:

> [A] lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit in the lawyer's behalf…. The term "solicit" includes contact … by telephone.

Fla. R. Prof. Cond. 4-7.4(a). The comments to Rule 4-7.4(a) explain the potential for abuse inherent in direct solicitation, stating that it is "fraught with the possibility of undue influence . . . and overreaching." Fla. R. Prof. Cond. 4-7.4(a) cmt. The comments also explain that direct solicitation is particularly inappropriate because such "[d]irect private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and perhaps cross) the dividing line between accurate representations and those that are false and misleading." *Id.* Moreover, the comments specifically provide guidance for even permissible written solicitation, stating that, "the lawyer or law firm should reveal the source of information used to determine that the recipient has a

---

[2] As the Supreme Court has explained, "[t]he Rules prohibiting solicitation are prophylactic measures whose objective is the prevention of harm before it occurs. The Rules were applied in this case to discipline a lawyer for soliciting employment for pecuniary gain under circumstances likely to result in the adverse consequences which the state seeks to avert. In such a situation, which is inherently conducive to overreaching and other forms of misconduct, the state has a strong interest in adopting and enforcing rules of conduct designed to protect the public from harmful solicitation by lawyers whom it has licensed." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 461, 985 S. Ct. 1912, 1921, 56 L. Ed. 2d 444, 464 (1978). The inherent power of the federal courts includes the power to discipline attorneys who appear before it, and "impose reasonable and appropriate sanctions upon errant lawyers." *Thomas v. Tenneco Packaging Co., Inc.*, 293 F. 3d 1306, 1320 (11th Cir. 2001); *see Chambers v. Nasco, Inc.,* 501 U.S. 32, 43 (1991).

potential legal problem." Specifically, the comments recognize that "disclosure of the information source will help the recipient to understand the extent of knowledge the lawyer or law firm has regarding the recipient's particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient's matter if the lawyer does not," as was clearly the case here. Despite this clear guidance, here, the "lawyer or law firm" blatantly refused to reveal the source of information regarding Mr. Kandt's situation, despite his direct request for that information.

Significantly, Pulte's concerns about misleading and improper communications and solicitations of putative class members are even more warranted because this is not the first time that Plaintiff's counsel have been warned about improper solicitation in FLSA cases. Specifically, in at least two other nationwide collective actions (and possibly more), Plaintiff's counsel have faced allegations of improper solicitation. In one, Plaintiff's counsel admitted to engaging in improper direct solicitations and a cease and desist order issued. *See* Pilgrim's Pride's Motion to Prohibit Conduct in Violation of Rules of Professional Conduct, attached hereto at Tab D, and Order dated October 11, 2007, attached hereto at Tab E, in *In re: Pilgrim's Pride*, Case No. 1:07-CV-1832 (W.D. Ark.). In another case still pending before an MDL panel, Plaintiff's counsel was accused by the Defendant of having engaged in direct and improper solicitation of prospective class members. *See* Wayne Farms' Brief Supporting Defendant's Second Motion for Partial Summary Judgment (Consent Invalidity) at 6-10, 20-21 (still pending), attached hereto at Tab F, in *Agee v. Wayne Farms, LLC*, Case No. 06-268, and *Keyes v. Wayne Farms LLC*, Case No. 07-29 (S.D. Miss.).[3]

---

[3] The case was later transferred to the U.S. Judicial Panel on Multidistrict Litigation, where it remains pending.

**CONCLUSION**

Based on the foregoing facts and authority, Pulte respectfully requests that the Court enter an order: (1) instructing Plaintiff's counsel to cease and desist from directly soliciting and having improper and misleading communications with present and former employees of Pulte entities; (2) requiring Plaintiff's counsel to produce the names and contact information for all current and former employees who worked for any Pulte entity within the three years preceding this lawsuit who had no prior relationship with Plaintiff's counsel, but were contacted by Plaintiff's counsel (including through its agents or employees); and (3) granting other relief a the Court deems just and/or necessary, including striking improperly obtained opt-ins and denying Plaintiff's Motion to Certify.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)**

The undersigned counsel has consulted with Plaintiff's counsel several times in an effort to resolve the issues raised in this Motion, but the parties were not able to reach a resolution.

Dated this 28th day of May, 2008.

Respectfully submitted,

/s/ Sharon A. Lisitzky
Anne Marie Estevez, Esq.
 Florida Bar No. 991694
 aestevez@morganlewis.com
Sharon A. Lisitzky, Esq.
 Florida Bar No. 0382700
 slisitzky@morganlewis.com
Morgan, Lewis & Bockius LLP
Attorneys for Defendant Pulte
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2339
Telephone: 305.415.3330
eFacsimile: 877.432.9652

CASE NO. 6:08-CV-00130-PCF-DAB

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will, in turn, send a notice of electronic filing to Richard Celler, Morgan & Morgan, PA, 7450 Griffin Road, Suite 230, Davie, FL 33324; Gregg I. Shavitz, Esq., Shavitz Law Group, P.A., 1515 South Federal Highway, Suite 404, Boca Raton, FL 33432; and C. Ryan Morgan, Esq., Morgan & Morgan, PA, 20 N. Orange Avenue, Suite 1600, P.O. Box 4979, Orlando, FL 32802, this 28th day of May, 2008.

/s/ Sharon A. Lisitzky
Sharon A. Lisitzky