UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**TRACY SIMPKINS, on behalf of himself and
all similarly situated employees,**

**Plaintiffs,**

**-vs-**                                                           **Case No.  6:08-cv-130-Orl-19DAB**

**PULTE HOME CORPORATION, a foreign
corporation,**

**Defendant.**
_____

# ORDER

This cause came before the Court on the following:

1.      Motion by Plaintiff[1] to Conditionally Certify Collective Action and Facilitate Notice to
        Potential Class Members and Incorporated Memorandum of Law (Doc. No. 50, filed Apr.
        25, 2008);

2.      Response by Defendant in Opposition to Plaintiff's Motion to Conditionally Certify
        Collective Action and Facilitate Notice to Potential Class Members (Doc. No. 90, filed May
        28, 2008);

3.      Reply Memorandum by Plaintiff in Support of Motion Seeking an Order on Conditional
        Class Certification (Doc. No. 127, filed June 30, 2008);

---

[1]      The parties use the term "Plaintiff" to refer to Tracy Simpkins individually, and the
Court will adopt that usage for purposes of this Order.  However, forty-seven opt-in Plaintiffs have
joined this action.

4.      Motion by Defendant to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), or Alternative Case-Dispositive Motion for Summary Judgment, and Incorporated Memorandum of Law (Doc. No. 106, filed June 12, 2008);

5.      Response Memorandum by Plaintiff in Opposition to Defendant's Motion to Dismiss or Alternatively for Summary Judgment (Doc. No. 120, filed June 19, 2008);

6.      Motion by Defendant to Strike Declaration of Salvador Souto III, filed in Opposition to Defendant's Motion to Dismiss or for Summary Judgment, and Incorporated Memorandum of Law (Doc. No. 124, filed June 25, 2008);

7.      Response by Plaintiff to Defendant's Motion to Strike Declaration of Salvador Souto III (Doc. No. 138, filed July 14, 2008);

8.      Notice by Plaintiff of Supplemental Authority in Support of Motion for Conditional Class Certification (Doc. No. 133, filed July 3, 2008); and

9.      "Response" by Defendant to Plaintiff's Notice of Supplemental Authority (Doc. No. 145, filed Aug. 14, 2008).

**Background**

Plaintiff Tracy Simpkins brings this action against his former employer, Pulte Home Corporation ("Pulte") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), alleging that Pulte failed to pay him overtime compensation due under the Act.  (Doc. No. 1, filed Jan. 28, 2008.)  Simpkins now requests permission to send notice to "similarly situated employees" of Pulte to advise them of their right to opt-in to the law suit.  (Doc. No. 50.)  In addition, Pulte has moved to dismiss the action for lack of subject matter jurisdiction and alternatively seeks summary

judgment. (Doc. No. 106.) The facts relevant to each Motion will be described in greater detail below.

**Analysis**

## I.  Conditional Certification

The FLSA requires certain employers to pay certain employees increased wages for hours worked in excess of forty hours per week. 29 U.S.C. § 207 (2006). As an enforcement mechanism, section 216(b) of the FLSA allows employees to bring civil actions against these employers to recover unpaid overtime compensation. *Id.* § 216(b). The section also permits employees to file suit on behalf of "similarly situated" employees. *Id.* However, unlike traditional class actions in federal court, potential class members must "opt-in" to the suit by filing "consent in writing to become such a party" with the court where the suit is pending. *Id.* Another difference from traditional class actions is that the FLSA does not statutorily provide for notice to be sent to potential class members. *Compare* 29 U.S.C. § 216(b), *with* Fed. R. Civ. P. 23(c)(2).

In *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989), the Supreme Court explained that Congress' failure to include a notice provision in section 216(b) did not foreclose courts from authorizing plaintiffs to send "opt-in" notices to similarly situated employees. The Eleventh Circuit has implemented the *Sperling* decision by creating a two-tiered system for certification of FLSA collective action suits. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).[2] In the first tier, the court "conditionally certifies" a class and authorizes notice to be sent to potential class members. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th

---

[2] The Age Discrimination in Employment Act adopted the "opt-in" provision of the FLSA. 29 U.S.C. § 626(b). Accordingly, the same body of law governs opt-in actions under both Acts. *See, e.g.*, *Grayson*, 79 F.3d at 1096.

Cir. 2001).  Once additional class members have joined, the court proceeds to the second tier where it makes a fact specific determination whether the original and opt-in plaintiffs are truly similarly situated.  *Id.*

### A.      Standard for Conditional Certification

FLSA collective actions may be brought by an employee or group of employees on behalf of other "similarly situated" employees.  29 U.S.C. § 216(b).  The plaintiffs bear the burden at all times to demonstrate that the class is similarly situated.  *Grayson*, 79 F.3d at 1096.   Nevertheless, this burden is lighter than "that for joinder or for certification of a class action under Federal Rules of Civil Procedure 20(a) or 23, respectively."  *Gonzales v. Hair Club for Men, Ltd., Inc.*, No. 6:06-cv-1762, 2007 WL 1079291, at *2 (M.D. Fla. Apr. 9, 2007) (citing *Grayson*, 79 F.3d at 1096).  The plaintiffs need only demonstrate that their positions are "similar, not identical" to the positions held by the potential plaintiffs.  *Grayson*, 79 F.3d at 1096.  That said, unsupported allegations that FLSA violations were widespread and that additional plaintiffs exist are insufficient to meet the plaintiffs' burden.  *Haynes v. Singer, Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983).

The Eleventh Circuit suggests that district courts utilize a two-tiered approach for the certification of FLSA class actions.  *Gonzales*, 2007 WL 1079291 at *2.  The first step is the notice stage, where the district court makes the "decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential [plaintiffs]."  *Id.* (quoting *Hipp*, 252 at 1218-19) (alteration by the *Gonzales* court).  At this stage, the Plaintiff need only demonstrate a "reasonable basis" to believe that similarly situated individuals exist in the proposed class.  *Id.* (citing *Marsh v. Butler County Sch. Sys.*, 242 F. Supp. 2d 1086, 1091 (M.D. Ala. 2003)).  The burden at this stage is not heavy and may be met by "detailed allegations

supported by affidavits." *Grayson*, 79 F.3d at 1097.  However, while the burden at the "notice

stage" is very low, it is not "invisible." *Brooks v. Rainaldi Plumbing Inc.*, No. 6:06-cv-631, 2006

WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006).  Indeed, federal courts across the Middle and Southern

Districts of Florida have routinely denied requests for conditional certification where plaintiffs

attempt to certify a broad class based only on the conclusory allegations of a few employees.[3]

Once the district court grants conditional certification, potential plaintiffs receive notice

informing them of their right to "opt-in" to the law suit. *Gonzales*, 2007 WL 1079291 at *3.  After

---

[3]        *See Cohen v. Allied Steel Bldgs., Inc.*, 554 F. Supp. 2d 1331, 1334-35 (S.D. Fla. 2008)
(attempt to certify a class based on terse affidavits which failed to even give a job description);
*Rappaport v. Embarq Mgmt.* Co., No. 6:07-cv-468-Orl-19DAB, 2007 WL 4482581, at *4-5 (M.D.
Fla. Dec. 18, 2007) (attempt to certify nationwide class based on conclusory affidavits with no
evidence of a company-wide policy of denying overtime compensation); *Gonzales*, 2007 WL
1079291 at * 3-4 (attempt to certify a conditional class of hair stylists in 47 stores nationwide based
only on affidavits of two local employees); *Tafarella v. Hollywood Greyhound Track, Inc.*, No. 7-
600017-CIV, 2007 WL 2254553, at *1-5 (S.D. Fla. Aug. 1, 2007) (attempt to certify class of all tip-
receiving employees based only on affidavits of casino dealers);  *Kessler v. Lifesafer Serv.
Providers, LLC,* No. 6:06-cv-1442, 2007 WL 1531395, at *1-3 (M.D. Fla. May 25, 2007) (attempt
to certify class based only on conclusory allegations); *Ulysse v. Divosta Bldg. Corp.*, No. 06-80338-
CIV, 2006 WL 3618449, at *2-3 (S.D. Fla. Dec. 11, 2006) (attempt to certify broad class of
employees, based on one affidavit containing hearsay and second-hand knowledge, where the
plaintiff did not allege the existence of a company-wide policy);  *Brooks v. A. Rainaldi Plumbing,
Inc.*, No. 6:06-cv-631, 2006 WL 3544737, at *1-2 (M.D. Fla. Dec. 8, 2006) (attempt to certify class
consisting of four types of laborers among two different companies); *Becker v. Southern Soils, Turf
Management Inc.*, No. 6:06-cv-22, 2006 WL 3359687, at *3-4 (M.D. Fla. Nov. 20, 2006) (attempt
to certify class of various employees based on two affidavits which did not specify the named
plaintiffs' job positions); *Robinson v. Dolgencorp*, No. 5:06-cv-122, 2006 WL 3360944, at *5 (M.D.
Fla. Nov. 13, 2006) (attempt to conditionally certify class of 58,000 nationwide employees based
on affidavits of three local employees); *Sandate v. Makotek, LLC*, No. 6:06-cv-601, 2006 WL
4792782, at *1-5 (M.D. Fla.  Sept. 28, 2006) (attempt to certify class of cable technicians where
plaintiffs were employed by one of two branches of the company and failed to show that any other
technicians were interested in joining the suit); *White v. KCPAR, Inc.*, No. 6:05-cv-1317, 2006 WL
1722348, at *1-4 (M.D. Fla. June 20, 2006) (attempt to certify a company-wide class of cooks based
on affidavits of three employees);  *Rodgers v. CVS Pharmacy, Inc.,*  No. 8:05-cv-77, 2006 WL
752831, at *1-6 (M.D. Fla. Mar. 23, 2006) (attempt to certify nationwide class of nearly 250,000
employees based on three affidavits).

the completion of discovery, the defendant may initiate the second tier by moving for "decertification." *Id.* At this point, the court makes a factual inquiry as to whether the claimants are truly "similarly situated." *Id.* If they are not, the district court decertifies the group and dismisses the opt-in plaintiffs without prejudice. *Id.*

Although the "two-tier approach" is popular among the district courts, the Eleventh Circuit has stressed that "[n]othing in [the Eleventh Circuit] precedent . . . requires district courts to utilize this approach." *Id.* (quoting *Hipp*, 252 F.3d at 1219) (alterations in original). And in all cases, the decision to create an opt-in collective action remains "soundly within the discretion of the district court." *Hipp*, 252 F.3d at 1219.

### B. Nationwide Certification of a Class of Superintendents Based on the Record Evidence and Pleadings

According to his affidavit, Plaintiff Tracy Simpkins worked as a "builder" or "superintendent" for Pulte Homes in Orlando, Florida from September 2005 to July 2007. (Doc. No. 50-3 ¶ 3.) His duties included "babysitting the construction of new homes as well as the routine performance of construction work." (*Id.*) He was paid on a salary basis, "regularly worked in excess of forty hours per week," and was not paid at time and half for his overtime work. (*Id.* ¶¶ 3-5.) Simpkins states that "numerous other 'Builders'" who performed the same job duties were also denied overtime compensation. (*Id.* ¶ 7.)

Simpkins seeks conditional certification of a class of "all salaried 'builders' or 'superintendents' employed by [Pulte] nationwide over the last three years." (Doc. No. 50 at 1.) Simpkins supports his Motion by submitting the affidavits of employees from five states who "all attest to the same facts regarding job responsibilities and duties, hours worked, and failure to be paid overtime." (Doc. No. 50 at 4.) The attached affidavits feature nearly identical language to

Simpkins' own affidavit, save for insertion of different names and locations.  (*Compare* Doc. No. 50-3, *with* Doc. No. 50-4.)  In addition, Simpkins argues that his proposed scope of notice is appropriate because Pulte erroneously classified all superintendents, nationwide, as exempt from the FLSA under the same set of exemptions.  (Doc. No. 50 at 4-6.)  Thus, Simpkins argues that there is enough evidence that similarly situated employees exist across the class to warrant conditional certification and the authorization of a Court-approved notice.[4]  (*Id.*)

Pulte strongly opposes Simpkins' request, presenting three arguments in support of its position: (1) that the members of the proposed opt-in class are not similarly situated; (2) that notice is unnecessary because Simpkins' lawyers have engaged in an aggressive advertising and solicitation campaign; and (3) that Court-authorized notice would be severely damaging to Pulte's reputation.  Each argument will be analyzed below.

1.      **Whether Simpkins has Presented Sufficient Evidence of Similarly-Situated Employees**

In its thirty-four page Response in Opposition to Simpkins' Motion, Pulte explains what it perceives as factual differences among members of the potential opt-in class.  Pulte admits that it classified Simpkins and all other superintendents as exempt under the administrative, executive, professional, highly-compensated, and combination exemptions to the FLSA.  (Doc. No. 90 at 9 & n.1; Doc. No. 115 at 5 ¶ 2.)  However, Pulte argues that the various members of Simpkins' proposed opt-in class differ in the following respects:

---

[4]      The exact size of the proposed class is not specified in the submissions or the record evidence.  However, Simpkins estimates the class size to be "thousands" or "hundreds, if not a thousand."  (Doc. No. 50 at 2, 11.)

- Pulte has a decentralized operation, consisting of subsidiaries in twenty-six states and over forty separate divisions, each under different management. (Doc. No. 90 at 10.)  As a result, the level of supervision over each superintendent varies across different divisions.  (*Id.*)

- The experience, education, relevant licenses, and training of superintendents vary.  (*Id.* at 10-11.)

- The types of projects to which superintendents are assigned vary in number of units constructed, type of unit constructed, and duration of time spent building.  (*Id.* at 12.)

- The authority to schedule, pay, back-charge, fine, and fire subcontractors varies among superintendents.  (*Id.* at 12-14.)  A superintendent may be responsible for managing crews of subcontractors consisting of anywhere between a few to hundreds of laborers.  (*Id.*)

- Superintendents manage budgets of varying sizes, ranging from just several million to fifty million dollars.  (*Id.* at 14.)

- Superintendents have varying amounts of discretion to order and pay for materials.  (*Id.* at 15.)

- All Superintendents are responsible for ensuring the safety of the persons and property under their watch; however, the various risks and methods for dealing with these issues vary among job sites.  (*Id.* at 15-16.)

- Superintendents have varying discretion to deviate from blueprints, judge when a home is ready to be inspected, and coordinate inspections with local authorities.  (*Id.* at 16.)

- Although several opt-in Plaintiffs indicate that they were required to strictly follow a book called "The Red Book," other supervisors state that the book was of relative non-importance or that they have never heard of it.  (*Id.* at 17.)

- Fifty-six other superintendents (who have not opted-in to this action) state that they spend little, if any, time performing manual labor.  (*Id.* at 18.)

- While Simpkins states that he was required to work 7 a.m. to 5 p.m. daily, other superintendents had flexible work schedules, and many rarely worked over 40 hours per week.  (*Id.* at 19.)

- Superintendents gave varying estimations of the number of Pulte employees which they supervised.  Further, some superintendents are designated as "leads" and entrusted with additional managerial and discretionary functions.  (*Id.* at 20-21.)

Pulte supports these arguments with affidavits that it procured from a Pulte administrative assistant in its litigation department (Doc. No. 90-2) and Pulte superintendents (Doc. Nos. 90-5 to 90-7). Pulte also relies on excerpts from the depositions of Simpkins and several Plaintiffs who have already opted into the action.[5]  (Doc. Nos. 90-8 to 9-11.)

In addition, Pulte attacks factual assertions made by Simpkins and the other opt-in Plaintiffs. (*Id.* at 20-22.)  Pulte contends that the Tennessee opt-in plaintiff refused to be deposed and an Arizona opt-in withdrew his consent upon request for a deposition.  (*Id.* at 22 & n.9.)  Further, Pulte contends that at least two opt-ins are not part of the class because they were paid more than $100,000, and the Tennessee and Texas opt-ins worked for different entities than Simpkins.  (*Id.*) According to Pulte, "[o]nce these deficient opt-ins are peeled away, Plaintiff's purported class falls like a house of cards, and the futility of Plaintiff's Motion becomes even more apparent."  (*Id.* at 7.)

_____

[5]     Judge Baker permitted Pulte to take ninety minute depositions of Simpkins and three other plaintiffs who have already opted into this action.  (Doc. No. 59 at 2, filed May 2, 2008.)

a.        Scope of the Notice Stage Inquiry

Pulte presents a mass of evidence in opposition to Simpkins' collection of declarations. However, more is not necessarily better, and the evidence Pulte presents goes far beyond the scope of this Court's review at the first stage of the certification process.[6]

As explained above, the Eleventh Circuit suggests that district courts utilize a two-tiered approach for the certification of FLSA class actions.  *E.g.*, *Gonzales*, 2007 WL 1079291 at *2.  The first step is the notice stage, where the district court makes the "decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential [plaintiffs]."  *Id.* (quoting *Hipp*, 252 F.3d at 1218-19) (alteration by the *Gonzales* court).  At this stage, the plaintiff need only demonstrate a "reasonable basis" to believe that similarly situated individuals exist in the proposed class.  *Id.* (citing *Marsh*, 242 F. Supp. 2d at 1091).

Pulte contends that this Court should apply a "stricter standard" because Pulte has presented "masses of sworn testimony" that "indicates a need for individual factual analyses . . . ."  (Doc. No. 90 at 23-24.)  The Court disagrees.  In all but a handful of cases, the individual factual analysis is saved for the second stage of certification.  *See Hipp*, 252 F.3d at 1218.  The Eleventh Circuit has explained that Courts at the first stage are typically presented with only "minimal evidence," resulting in the need to utilize a fairly lenient standard.  *Id.*  This is why successful completion of the first stage results in "conditional certification" and not "certification."  *See id.*   Logically, however, in cases where discovery has already occurred, a more searching inquiry may be

_____

[6]        Pulte Presents over 500 pages of declarations and deposition transcripts in support. (Doc. Nos. 90-2 to 90-16.)

appropriate at the first stage because both sides have had a chance to develop the factual record. *E.g.*, *Tyler v. Payless Shoe Source, Inc.*, No. 2:05-CV-33F(WO), 2005 WL 3133763, at *6 (M.D. Ala. 2005); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004), *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *4-5 (E.D. La. 2004).  In such cases, the first and second stages may be collapsed to some degree.  *See Basco*, 2004 WL 1497709, at *4 (citing *Pfohl v. Farmers Ins. Group*, No. CV03-3080 DT (RCX), 2004 WL 554834 (C.D.Cal. Mar. 1, 2004)).

       The Eleventh Circuit's observation that courts proceed on a limited record at the first stage was not an invitation for Pulte to inundate the Court with affidavits.  This Court will not apply a stricter, more individualized review simply because Pulte has presented 500 pages of evidence that contradict Simpkins' assertions to some degree.  The fact remains that this case is still in its early stages, it has not proceeded to discovery, and both sides have not had an opportunity to fully investigate the relevant facts.  (Doc. No. 14, filed Feb. 21, 2008 (staying discovery until further order as part of the Court's routine FLSA Scheduling Order); Doc. No. 132, filed July 2, 2008 (staying all discovery until the Court rules on the certification issue).)

       In addition, the behavior of counsel in this case demonstrates exactly why the two-stage certification process is desirable.  As Magistrate Judge Baker noted, "both sides have been contacting Pulte employees (current and former), ostensibly for 'investigation' purposes, but in reality, in an effort to gain adherents to their particular position." (Doc. No. 132 at 2.)  This concern caused Judge Baker to order both sides to cease and desist from contacting the potential plaintiff-pool of Pulte employees.  (*Id.*)  The Court considers this experience to be powerful anecdotal

evidence that the first stage of certification is best conducted with a lenient standard of review based on a limited factual record.

### b.     The Sufficiency of Simpkins' Evidence

Pulte next argues that Simpkins fails under any standard because he presents nothing more than vague, form declarations in support of his Motion for conditional certification.  (Doc. No. 90 at 24-25 (citing *Rappaport*, 2007 WL 4482581, at *4 n.5).)  Pulte contends that it has presented evidence that the factual characteristics of superintendents differ across geographic regions and Simpkins cannot achieve certification based solely on the fact that all superintendents were subject to the same FLSA exemption classification.  (Doc. No. 90 at 25-27.)

The ultimate question in the certification process is whether employees are "similarly situated."  As previously explained, the burden to meet this standard is less stringent than "that for joinder or for certification of a class action under Federal Rules of Civil Procedure 20(a) or 23, respectively."  *Gonzales*, 2007 WL 1079291, at *2 & n.2 (citing *Grayson*, 79 F.3d at 1096). The plaintiff need only demonstrate that his or her position is "similar, not identical" to the positions held by the potential plaintiffs.  *Id.* While a plaintiff's burden is not particularly strict, "unsupported allegations that FLSA violations were widespread and that additional plaintiffs" exist are insufficient to establish that similarly situated employees exist.  *Id.* (citing *Haynes*, 696 F.2d at 887).  In the notice stage, the plaintiff must only establish that there is at least a "reasonable basis" to conclude that similarly situated employees exist across the opt-in class. *Gonzales*, 2007 WL 1079291, at *3.

Pulte is correct that Simpkins' declarations lack substance and bear the signs of "cookie-cutter," form affidavits.  Certainly, Simpkins' attorneys could have presented their case for certification in a more detailed and persuasive manner.  However, the affidavits, combined with

-12-

Pulte's own evidence and the pleadings, establish several essential facts that persuade this Court that the low standard for conditional certification is met.

Most importantly, Pulte classified all superintendents as being exempt from overtime compensation under the same five FLSA exemptions. (Doc. No. 90 at 9 & n.1; Doc. No. 115 at 5 ¶ 2.). This fact distinguishes Simpkins' case from this Court's decision in *Rappaport*, 2007 WL 4482581, at \*4. In that case, a group of telemarketers, employed in two offices of two subsidiaries of the Embarq corporation, wished to send notice to other telemarketers employed by the companies. *Id.* at \*1-5. There was no evidence in the record that either Embarq subsidiary had a policy of not paying overtime to its employees, and the plaintiffs claimed that the violations of the FLSA actually arose from various supervisors requiring their employees to work more than forty hours per week without recording the overtime. *Id.* at \*1-2, 5. In response, the defendants presented evidence demonstrating that employees across the company had varying responsibilities and were subject to different supervisors and time schedules. *Id.* at \*1-5. The Court denied conditional certification because there was simply no basis to conclude that employees across the companies were subject to similar policies. *Id.* at \*4-5.

Like *Rappaport*, Pulte has presented significant evidence that factual differences may exist across the opt-in class. Specifically, members of the class may have worked varying hours, and some members may be more likely to be exempt from overtime pay under the FLSA. However, it is undisputed that Pulte classifies all superintendents as exempt from overtime under a common set of FLSA exemptions. (Doc. No. 90 at 9 & n.1.) Thus, Pulte's own management has determined that these employees are similar enough to be classified under the same exemptions for purposes of complying with the FLSA. Moreover, Pulte's evidence demonstrates that there are at least some

commonalities among the relevant job duties of superintendents across the proposed class.  (Doc. No. 90 at 12 ("Many superintendents supervise and direct the work of Pulte's subcontractors and vendors, ranging from crews of a few people to hundreds on a single day."); *id.* at 14 (stating that superintendents manage budgets of varying sizes); *id.* at 15 ("Superintendents have significant, but varying amounts of, discretion to order materials."); *id.* ("Each superintendent is responsible for monitoring safety . . . .").)  Thus, in contrast to *Rappaport*, there is a reasonable basis to conclude that members of the proposed class are "similarly situated."  *Grayson*, 79 F.3d at 1096.[7]

Pulte makes a number of policy-based arguments why this Court should not find Simpkins' evidence to be sufficient.  (Doc. No. 90 at 25-26, 29 (arguing that a standard for certification based solely on the employer's exemption classifications would allow a plaintiff to achieve certification merely through filing a complaint; arguing that granting conditional certification threatens to clog "this Court's docket for years" with "hundreds of mini-trials").  However, these arguments are directed toward the wrong stage of the certification process.   Tellingly, Pulte draws most of the legal support for the arguments from cases decertifying a class at the second stage or choosing not to proceed  under the two-stage framework. *Basco*, 2004 WL 1497709, at *4 (concluding that first

---

[7]     A district court in the Northern District of California recently came to the same conclusion on similar facts:

> Here, plaintiffs have shown that Wells Fargo's policy and practice related to HMC compensation is uniform for all putative class-members. Plaintiffs have also submitted declarations indicating a significant degree of commonality among the experiences of HMCs. Although defendants raise substantial issues regarding the reliability of these declarations, plaintiffs' factual showing satisfies the lenient standard warranting conditional certification of this collective action.

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1071 (N.D. Cal. 2007).

tier treatment was inappropriate because the case had already proceeded to discovery); *Bayles v. Am. Med. Response of Colo.*, 950 F. Supp. 1053, 1067-68 (1996) (second stage); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 379 (D.N.J. 1987) (second stage); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497-98 (D.N.J. 1987) (concluding that the case was "beyond the first tier").  Thus, they are largely irrelevant to the issue of conditional certification.

## 2. Advertising by Simpkins' Attorneys

Next, Pulte argues that conditional certification is unnecessary because the Morgan & Morgan firm has an aggressive advertising campaign to solicit opt-ins for this specific case.  (Doc. No. 90 at 30-32.)  Pulte also contends that attorneys from the firm have directly contacted Pulte employees in violation of the Florida Bar's rules of professional conduct.  (*Id.*)  Pulte provides no legal authority for how these facts should affect the Court's conditional certification analysis, and the Court fails to see any logic in its argument.[8]  A mass-market advertisement is not a replacement for a targeted Court-authorized notice that fully explains a potential opt-in plaintiff's rights.  Furthermore, the conduct of Simpkins' attorneys should not be determinative of whether members of the opt-in class receive a notice of this action and an explanation of their rights.  Finally, Judge Baker has already dealt with the allegations of unauthorized solicitation, and it appears that Pulte's attorneys have engaged in equally reproachable behavior.  (Doc. No. 132 at 2.)

------

[8]      Pulte cites two cases where solicitation appeared to play some role in the court's conditional certification analysis.  (Doc. No. 90 at 31 (citing *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 436 (E.D. Va. 2002); *Pfohl*, 2004 WL 554834, at *10.)  However, neither case clearly deals with the issue or discusses how previous instances of solicitation should factor into the two-stage framework.  *Bernard*, 231 F. Supp. 2d at 433 (concluding that further notice to a subset of the proposed class was unnecessary because the plaintiffs had already had ample opportunity to reach these individuals); *Pfohl*, 2004 WL 554834 at *10 (considering the plaintiff's failed attempts to solicit opt-ins as an "additional reason[]" to deny conditional certification).  Thus, they provide little guidance to the current issue.

### 3.      Harm to Pulte

Finally, Pulte argues that it will suffer irreparable harm if the Court authorizes notice. According to Pulte, "in a case similar to this one, the Eleventh Circuit reversed a decision approving the sending of notice, citing the 'serious and irreparable harm to [the defendant's] reputation and to its relationship with its [employees]' that such premature notice could have."  (Doc. No. 90 at 32 (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (first alteration by Pulte)).)

*Jackson* is not similar to this case, and Pulte gives no reason to believe that it will suffer serious and irreparable harm.  In *Jackson*, the Eleventh Circuit reversed a district court that authorized a pre-certification mass mailing to the "public at large" concerning a race discrimination case against a major hotel chain. *Jackson*, 130 F.3d at 1001.  By contrast, Simpkins seeks to send notice to potential opt-ins through a process that has been approved and recommended by the Eleventh Circuit.  *Grayson v. K Mart Corp.*, 79 F.3d at 1096.  Furthermore, aside from citing the general downturn in the real estate sector, Pulte offers no case-specific explanation of how it will suffer harm in this case.

### 4.      Content of the Notice

Plaintiffs attach a proposed notice to their Motion as Document Number 50-6.  Pulte objects to the notice and proposes that the parties be required to jointly prepare a mutually agreeable notice. (Doc. No. 90 at 32 n.14.)  In the interests of efficiency, the parties shall adhere to the following process:

- The geographic scope of the notice will be nationwide, and the temporal scope will include all current and former employees who have worked for Pulte within the last three years from the date the letter is mailed.[9]  The Court acknowledges that a three-year statute of limitations applies only to "willful violations" of the FLSA.  *McLaughlin v. Richland Shoes Co.*, 486 U.S. 128, 133-34 (1988)).  However, the determination whether that standard is met in this case is fact determinative and will not be made at the conditional certification stage.  *See id.* (explaining the relevant facts for determining whether a violation was willful).

- Plaintiff has ten (10) days from the date of this Order to produce a Notice that is consistent with those commonly authorized by this Court.  For example, the Notice should explain that opt-in plaintiffs may be required to sit for depositions, answer interrogatories, and could be responsible for a portion of Defendant's costs.  For an example of a sufficient notice, counsel are directed to *Cox v. Appliance Direct, Inc.*, 6:08-cv-216-ACC-DAB, docket entries 66 and 69.

- Upon completion, Plaintiff shall forward a copy of the Notice to Defendant.  The parties will thereafter have ten (10) days to come to a mutually agreeable form of the Notice.

- If the parties cannot agree on a mutually acceptable form of the Notice, Defendant may move the Court to alter Plaintiff's proposed form of notice.  However, in the motion, Defendant must present (1) case law supporting the specific language that Defendant seeks to have

---

[9]  Simpkins does not specify from which date the three-year period should be calculated.  Because the statute of limitations runs until the written opt-in notice is filed with the Court, 29 U.S.C. § 256, it is prudent to calculate the period from the latest date possible.

included or omitted; or (2) examples of Court-authorized notices in other cases from this District.[10]  Any such Motion will be referred to the U.S. Magistrate Judge for determination.

•     Upon agreeing to a mutually-acceptable form of notice, or upon Court approval of the notice, Defendant shall be directed by the Court to provide to Plaintiff the names and addresses of the proposed class members within ten (10) days.  Defendant shall be required to post the notice at all Pulte locations at which members of the potential class are employed.[11]

## II.      Subject Matter Jurisdiction and Pulte's Request for Summary Judgment

Pulte argues that this case must be dismissed for lack of subject matter jurisdiction because Simpkins lost standing to sue Pulte by signing an employee severance agreement in which he expressly agreed not to sue Pulte for any waivable claim.  (Doc. No. 106 at 1.)  Pulte also argues that it is entitled to summary judgment because the severance agreement bars Simpkins' claims, that by signing the agreement Simpkins effectively agreed to pursue his FLSA claims with the Department of Labor rather than in court, and that by signing the release Simpkins waived the right to bring a FLSA collective action.  (*Id.* at 5-12.)

These arguments are without merit.  Even assuming, for the sake of argument, that a party can lose standing to sue through a contractual waiver of claims, Pulte's argument that FLSA claims may be waived through a private agreement ignores Supreme Court case law directly on point.  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (concluding that public policy prevents an employee from waiving his or her right to receive liquidated damages under the FLSA by private

---

[10]      Defendant may be sanctioned if it lacks a reasonable basis for its objections or the Court determines that it filed a motion for the purpose of delay.  *See* Fed. R. Civ. P. 11.

[11]      *E.g.*, *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. Apr. 19, 2006).

agreement); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350,1352 (11th Cir. 1982) (interpreting *O'Neil* and concluding that employees may not privately waive the right to back pay or liquidated damages).  Pulte argues that this rule may be avoided because the agreement at issue is a "covenant" not to sue rather than a release of Simpkins' rights.  (Doc. No. 106 at 7-8.) However, Pulte does not explain why this distinction matters in the context of FLSA rights. Regardless of the name given to the document, or the mechanism by which it abrogates Simpkins' FLSA rights, the agreement attempts to do something that the Supreme Court has said cannot be done.  *Lynn's Food Stores, Inc.*, 679 F.2d at 1352.

Furthermore, Simpkins' release cannot be construed as an agreement to pursue his claims through the Department of Labor.  To begin, the release of claims specifically provides that "this provision does not release claims for . . . any claim that cannot be waived or released."  (Doc. No. 106-3 at 7.)   It is well established that FLSA claims cannot be waived or released by private agreement.  *Lynn's Food Stores, Inc.*, 679 F.2d at 1352.  Thus, the import of the language of the agreement is that it does not release Simpkins' FLSA claims.  Contractual agreements are interpreted according to their plain meaning, and there is no basis to conclude that Simpkins agreed to pursue his FLSA claims through the Department of Labor instead of court.  *E.g.*, *Kruse, Inc. v. Aqua Sun Ivs., Inc.*, No. 6:07-cv-1367-Orl-19UAM, 2008 WL 276030, at *5 (M.D. Fla. Jan. 31, 2008) (a release of claims should be interpreted according to its plain meaning).

Finally, Pulte's argument that the "right" to bring a collective action may be waived by agreement is equally unconvincing.  Again, the plain language of the release states that it does not waive any claim that cannot be waived.  (Doc. No. 106-3 at 7.)  Because the right to receive

damages under the FLSA cannot be waived, the most plain and unambiguous interpretation of the release is that it does not apply to FLSA rights.

Nevertheless, to avoid being bound by what the agreement actually says, Pulte argues that the "right" to bring a collective action may be waived because it is not a substantive right under the FLSA, and the agreement therefore draws a silent distinction between FLSA individual actions (which cannot be waived) and FLSA collective actions (which Pulte argues can be waived). (Doc. No. 106 at 9-11.) In support of this argument, Pulte cites several cases which found that an otherwise valid arbitration agreement could not be invalidated merely because it would interfere with an employee's ability to bring a FLSA collective action in court. (*Id.* 9-10.) The conclusion reached by these cases is not surprising since FLSA rights are subject to arbitration, and allowing employees to escape arbitration by claiming that it interfered with their ability to bring a collective action would create an exception that easily could swallow the rule. Furthermore, the statutory text and legislative history of the FLSA contain no indication that Congress wished for the strong public policy in favor of arbitration to yield in suits to recover wages under the Act. *Horenstein v. Mortg. Market, Inc.*, 9 F. App'x 618, 619 (9th cir. 2001). However, outside the context of arbitration, there is no legal authority for Pulte's assertion that an employee can waive the ability to bring an FLSA collective action while maintaining the ability to pursue an individual action in court.[12] Given this silence, the Court cannot conclude that the parties intended to define the term "cannot be waived or

---

[12] Pulte contends that it is "well-settled" that the right to bring a collective action may be waived. (Doc. No. 106 at 10.) However, all of the cases it cites either involve the arbitration of FLSA claims, *Horenstein*, 9 F. App'x at 619; *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004), or cite to other cases involving the arbitration of FLSA claims, *Jimenez v. JP Morgan Chase & Co., et al.*, No. 08-CV-0152W (WMC), 2008 WL 2036896, at *5 (S.D. Cal. May 8, 2008) (citing *Horenstein*, 9 F. App'x at 619).

released" according to a legal rule that does not exist.  Thus, the severance agreement does not prevent Simpkins from bringing a collective action.

Accordingly, (1) Pulte is not entitled to dismissal under Federal Rule of Civil Procedure 12(b)(1); and (2) Pulte is not entitled to summary judgment.[13]

## Conclusion

Based on the foregoing:

1.     The Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law by Plaintiff (Doc. No. 50, filed Apr. 25, 2008) is **GRANTED** as stated above.

2.     The Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), or Alternative Case-Dispositive Motion for Summary Judgment, and Incorporated Memorandum of Law (Doc. No. 106, filed June 12, 2008) is **DENIED**.

3.     Motion by Defendant to Strike Declaration of Salvador Souto III, filed in Opposition to Defendant's Motion to Dismiss or for Summary Judgment, and Incorporated Memorandum of Law (Doc. No. 124, filed June 25, 2008) is **DENIED as moot.**

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 21, 2008.

---

[13]     Simpkins presents the affidavit of a former Department of Labor ("DOL") employee on the issue of whether DOL procedures would allow Simpkins to effectively pursue his FLSA rights. (Doc. No. 120-2.)  Pulte moved to strike the affidavit, arguing that the affiant lacked personal knowledge of the matters, is not an expert, and was not disclosed in Simpkins' initial disclosures. (Doc. No. 129.)  Because the severance agreement clearly does not apply to Simpkins' rights under the FLSA, the matters addressed in this affidavit are immaterial, and the Motion to Strike is denied as moot.  *Catanzaro v. Lyons*, 232 F. App'x 878, 881 (11th Cir. 2007) (district courts may deny motions to strike as moot where the challenged averments were immaterial) (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1259 (11th Cir. 2004)).

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT